846 So.2d 954 (2003)
Claudette HURST
v.
SANDERSON FARMS, INC.
No. 2002 CA 1334.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
Rehearing Denied June 13, 2003.
*955 Cassandra Butler, Independence, Counsel for Plaintiff/Appellant Claudette Hurst.
Christopher Moody, Hammond, Counsel for Defendant/Appellee Sanderson Farms, Inc.
Before: PARRO, MCDONALD, and CLAIBORNE,[1] JJ.
MCDONALD, J.
This is an appeal of a workers' compensation case. Claudette Hurst began working on the production line at Sanderson Farms, Inc., on April 10, 2000. She filed a disputed claim for compensation against Sanderson Farms on March 6, 2001, and averred that she had injured her right wrist on May 25, 2000. Sanderson Farms *956 answered the claim, denying that Ms. Hurst had an injury or occupational disease and averring that Ms. Hurst was not injured as a result of any accident that happened at Sanderson Farms. Sanderson Farms further averred that Ms. Hurst had a pre-existing injury or accident that would explain her condition.
After a hearing, the workers' compensation judge, Elizabeth Warren, ruled in favor of Sanderson Farms, finding that Ms. Hurst had not proven a compensable occupational disease under La. R.S. 23:1031.1D. Her claim was dismissed with prejudice. Ms. Hurst appealed from that judgment and made the following assignment of error:
The [workers' compensation] judge erred in finding that the facts did not satisfy the claimant's burden of proof because that [sic] Ms. Hurst, who began complaining of pain in May, 2000 for right wrist pain and who was required to keep working through August of 2000, met her burden of proof that her carpal tunnel occurred in the course of her employment with Sanderson Farms.

THE STANDARD OF REVIEW
In a workers' compensation case, the appellate court's review of fact is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

DISCUSSION
It was stipulated at trial that Ms. Hurst began work on April 10, 2000. She worked in the marinated chicken department, tucking the legs and wings of whole chickens securely into place for packaging. Ms. Hurst began to complain of soreness in her right wrist approximately six weeks after she began working for Sanderson Farms. She complained to the nurse at Sanderson Farms, Malcolm Wagner, and he suggested she apply deep heat and an ace bandage. On May 25, 2000, Ms. Hurst went to see Nurse Wagner again and was sent to Dr. Mark Daunis at North Oaks Occupational Health Clinic.
Dr. Daunis diagnosed Ms. Hurst with tendonitis and a possible ganglion cyst on her right wrist. He referred her to Dr. B.J. Chiasson, an orthopedic surgeon at the Plaza Orthopedic and Sports Medicine Clinic. Dr. Chiasson first saw Ms. Hurst on June 13, 2000. He diagnosed her with tendonitis, gave her prescriptions for cortisone and Vioxx, and referred her to a physical therapist. Dr. Chiasson allowed her to continue working with light duty restrictions and limited use of her right hand. Ms. Hurst was offered a position in a different department that was determined to be less stressful to her hands, and she continued working. She missed her next scheduled appointment with Dr. Chiasson on July 6, 2000.
Ms. Hurst saw Dr. Chiasson again on July 12, 2000, at which time he increased her Vioxx prescription to 50 mg. He prescribed continued physical therapy, continued light duty restrictions, and asked her to return in three weeks for a follow-up visit. He also indicated EMG and nerve conduction studies should be done. Ms. Hurst was given a wrist splint to wear at night.
Nurse Wagner's records show that on August 29, 2000, someone from North Oaks Occupational Health Clinic called and reported that he/she was unable to contact Ms. Hurst and she had not been keeping *957 physical therapy appointments. She had not been going to work at Sanderson Farms, and her supervisor had not heard from her.
On August 30, 2000, Ms. Hurst requested and was approved to see Dr. Warren Williams Sr., her choice of orthopedist. On September 7, 2000, Dr. Williams saw Ms. Hurst for the first time. He diagnosed an injury to the right wrist and recommended conservative care, including magnatherm/diathermy treatments, no use of the right wrist, and a brace.
On September 19, 2000, Ms. Hurst was at Sanderson Farms and both Nurse Wagner and Ms. Hurst's supervisor requested a consultation with Ms. Hurst to discuss her case. Ms. Hurst refused to talk with them and left the facility. She was released from employment at Sanderson Farms that day. Approximately seven months later, on April 5, 2001, Dr. Williams diagnosed Ms. Hurst with carpal tunnel syndrome. Subsequently, Ms. Hurst filed a disputed claim for compensation, alleging she had developed carpal tunnel syndrome in the six weeks that she initially worked for Sanderson Farms.
Louisiana Revised Statute 23:1031.1 provided in pertinent part:[2]
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degnerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

* * *
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
Louisiana Revised Statute 23:1031.1D heightens the claimant's burden of proof in cases where the claimant suffers an occupational disease and has been employed with the defendant less than twelve months. In order for an occupational disease to be compensable in *958 cases where the claimant has been employed with the defendant for less than twelve months, La. R.S 23:1031.1D requires that an employee prove causation by an overwhelming preponderance of the evidence. Stuart v. New City Diner, 99-2270 (La.App. 4 Cir. 3/15/00), 758 So.2d 345, 348. See Alford v. Environmental Monitoring, 93-0985 (La.App. 1 Cir. 10/7/94), 646 So.2d 961, 963.
The Louisiana Supreme Court has not squarely addressed the issue of what constitutes an "overwhelming preponderance of evidence," although it has recognized in dicta that it is a "heightened" or "higher" standard of proof. Killett v. Sanderson Farms, 01-0277 (La.App. 1 Cir. 5/10/02), 818 So.2d 853, 859-860.
The legislature has used the phrase overwhelming preponderance of evidence as the statutory burden of proof in this case, but without defining the phrase. In its ordinary sense, according to our search into several dictionaries, the word overwhelm simply means to greatly overcome, to overcome by superior weight, force or numbers. We shall consider the phrase overwhelming preponderance, not as an oxymoron, but something greater than a mere preponderance and something that perhaps is closer to clear and convincing evidence, another phrase in the workers' compensation law found in La. R.S. 23:1221(1)(c). Dibler v. Highland Clinic, 27,274 (La.App. 2 Cir. 9/27/95), 661 So.2d 588, 592. To meet the standard of clear and convincing evidence in Section 1221(1)(c), a trier of fact's belief in a claimant's self-serving testimony alone is insufficient. Expert testimony of an objective quality that focuses on probabilities is additionally required to meet that standard. Dibler, 661 So.2d at 592.
The only evidence put forth at trial by Ms. Hurst linking her carpal tunnel syndrome to her employment at Sanderson Farms was her own testimony at trial that she suffered wrist pain six weeks after being employed at Sanderson Farms, and the fact that she was subsequently diagnosed with carpal tunnel syndrome. No medical report suggested that her activities at Sanderson Farms contributed to or caused her carpal tunnel syndrome.
Similar facts are found in Dvorak v. Melvin Jones Framing Contractors, 96-701 (La.App. 5 Cir. 1/15/97), 688 So.2d 94. In Dvorak, the claimant worked as a carpenter's helper. He claimed that after two weeks on the job he noticed numbness in his right hand, and after an initial examination, he was diagnosed with bilateral carpal tunnel syndrome. A second consultation confirmed the diagnosis, and both doctors indicated surgery was necessary to cure the condition. Dvorak's employer denied coverage, claiming the condition was not an occupational disease.
Dvorak's doctor stated that, while the injury could have been work-related, an inflammatory process could also have caused it. He stated that generally one or two weeks of repetitive actions would be insufficient to cause carpal tunnel syndrome, but an individual with an unusually small carpal tunnel or a preexisting inflammatory condition could develop the condition in a short period of time.
Considering the strong presumption against finding an occupational related illness in an employee that had been on the job less than twelve months, the Dvorak court found that the claimant's self-serving testimony and the medical testimony that failed to relate the condition to the employment with any certainty was insufficient to overcome the presumption against coverage set forth in La. R.S. 23:1301.1D.
In Ford v. Hart Associates, 605 So.2d 713 (La.App. 2 Cir.1992), Ms. Ford began working for Hart Associates in April of *959 1989 and stayed through January of 1990. Her job duties included applying a cleaning substance to brass lamps, vases and beds, lifting and carrying heavy trays of small parts, and cleaning those parts. Ms. Ford noticed problems with her hands after four months of employment. A month later, she saw a doctor who referred her to an orthopedic surgeon. The orthopedic surgeon diagnosed her with carpal tunnel syndrome. She later had surgery on both wrists, then filed for workers' compensation, asserting that her carpal tunnel syndrome was an occupational disease.
The hearing officer found Ms. Ford failed to prove by an overwhelming preponderance of the evidence that her carpal tunnel syndrome was job related. Ms. Ford's doctor could not determine the cause of the disease. On appeal, Ms. Ford contended that whether she contracted the condition during her work at Hart Associates, or that work aggravated a prior disease, she was entitled to workers' compensation benefits. However, the appellate court affirmed the finding of the administrative hearing officer that Ms. Ford failed to prove her condition was job related because she failed to prove a causal connection between her occupational disease and her employment by an overwhelming preponderance of evidence.
In the present case, during the first six weeks that Ms. Hurst worked at Sanderson Farms she did not work full time but was subjected to short intervals of time that contained job rotations. She presented no medical evidence that her work at Sanderson Farms caused or contributed to her carpal tunnel syndrome. Also, just prior to her diagnosis of carpal tunnel syndrome, Ms. Hurst fell out of the bathtub and injured her right wrist.
Thus, we find no manifest error in the workers' compensation judge's finding that Ms. Hurst did not meet her burden of establishing by an overwhelming preponderance of evidence that her employment activities at Sanderson Farms caused her to develop carpal tunnel syndrome.
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. Costs are assessed against Ms. Hurst.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Louisiana Revised Statute 23:1031.1D was revised by 2001 La. Acts, No. 1189, § 1, effective June 29, 2001, which in pertinent part changed the burden of proof from an "overwhelming preponderance of evidence" to "a preponderance of evidence." However, the governing law in a workers' compensation action is that which was in effect at the time of the alleged injury. Bruno v. Harbert International Inc., 593 So.2d 357, 360 (La.1992).