874 So.2d 852 (2004)
Deanna O. DOWELL
v.
OCHSNER CLINIC OF BATON ROUGE and The Neuromedical Center
No. 2003 CA 0460.
Court of Appeal of Louisiana, First Circuit.
March 10, 2004.
*854 Daniel J. Dazet, New Orleans, for Plaintiff-Appellee, Deanna O. Dowell.
Amanda H. Carmon, Baton Rouge, for Defendants-Appellants, The Neuromedical Center and Louisiana Workers' Compensation Corporation.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C. J.
This is a workers' compensation case in which the Office of Workers' Compensation Judge (WCJ) rendered judgment in favor of claimant, Deanna O. Dowell, and against her former employer, The Neuromedical Center (Neuromedical), for benefits, penalties, and attorney's fees in connection with claimant's carpal tunnel syndrome. Neuromedical and its insurer, Louisiana Workers' Compensation Corporation, appeal. For the following reasons, we reverse.

BACKGROUND
Claimant was employed as a medical transcriptionist at Ochsner Clinic of Baton Rouge (Ochsner) from October 1997 through June 7, 1999. Her job involved typing medical notes/reports from doctors' dictation. After leaving the Ochsner job, she began the same kind of transcriptionist position at Neuromedical on June 9, 1999. Less than six weeks later, on July 17, 1999, claimant stopped working for Neuromedical because of hand pain and numbness that interfered with her ability to type. Thereafter, claimant performed periodic contract work from her home, worked during January and February 2000 as a secretary/receptionist in a hospital, and worked during May and June 2000 as a secretary/receptionist in a small law firm. Due to continuous problems with pain and numbness in her left hand, claimant underwent surgery for carpal tunnel syndrome in August 2000. She was able to return to full-time employment in October 2000 as a medical transcriptionist for a different employer.
Ochsner paid claimant medical and indemnity benefits from July through December 1999. When her benefits were terminated, claimant filed a disputed claim for compensation against Ochsner and Neuromedical. She settled her claim against Ochsner and proceeded to trial on the merits against Neuromedical. After a trial, the WCJ rendered judgment against Neuromedical, awarding claimant medical and indemnity benefits, with a credit given for payments made by Ochsner, plus attorney fees, penalties, and interest.[1] Neuromedical appeals, arguing that the WCJ erred in requiring it to pay workers' compensation benefits based upon an occupational disease allegedly contracted during claimant's brief six-week employment, and the WCJ erred in finding that Neuromedical had not reasonably controverted claimant's claim.
Claimant admitted at trial, and her medical records confirm, that she first sought treatment for her hand pain on March 10, 1999, while employed at Ochsner. She saw her family physician, Dr. Harold Ishler, and reported that she had suffered for several days with increasing neck and left shoulder pain, as well as swelling in her *855 left hand. Dr. Ishler diagnosed tendonitis/bursitis in claimant's left shoulder and "probable carpal tunnel syndrome" in her left wrist. This was the first mention of carpal tunnel syndrome in claimant's medical records that were admitted into evidence. Claimant followed up with Dr. Ishler on March 15, 1999, for continued pain and decreased range of motion in her left shoulder and upper arm. She was treated with a cortisone injection in her left shoulder.
Approximately four months later on July 19, 1999, claimant returned to Dr. Ishler. She reported that she was experiencing left-hand numbness and pain after a long day of typing at her Neuromedical job. She also complained of having had similar symptoms in her right hand in the past. Dr. Ishler referred claimant to Dr. William J. Hubbard for a surgery consult for bilateral carpal tunnel syndrome. On July 23, 1999, claimant reported to Dr. Hubbard that she had a one-year history of bilateral hand numbness, with her left hand having worse symptoms than her right. Claimant specifically related her hand problems to her transcription work at both her jobs at Ochsner and Neuromedical. At trial, claimant testified that although she had experienced mild soreness in her hands before the July incident at Neuromedical, she had never experienced pain, numbness, and "freezing up" in her hands until July 1999. Claimant stated that due to her hand problems, she could not perform her typing job after July 1999. Dr. Hubbard diagnosed left carpal tunnel syndrome, recommended a nerve conduction study, administered cortisone injections, and restricted excessive use of claimant's left hand for six weeks.
Ochsner requested that claimant see Dr. Gray W. Barrow while paying her workers' compensation benefits. Claimant saw Dr. Barrow several times in August and October 1999 for her hand problems. She explained to Dr. Barrow that her symptoms had been present for approximately one year, but had become progressively worse over time. She complained of left-hand numbness when she typed. Dr. Barrow conducted an EMG nerve conduction study, ruled out carpal tunnel syndrome, and diagnosed claimant with overuse myalgia (muscle pain). Claimant's medical treatment from the various doctors included a splint, cortisone injections, physical therapy, and restrictions on repetitive wrist/hand motions. After a cortisone injection and physical therapy, claimant went without medical treatment for approximately six months. In April 2000, approximately ten months after claimant's employment at Neuromedical ended, she resumed medical treatment for increased pain and numbness in both hands. Dr. Hubbard eventually performed successful left carpal tunnel release surgery for claimant on August 25, 2000. After healing from the surgery, claimant returned to full-time employment as a transcriptionist in October 2000.

LAW AND ANALYSIS
In workers' compensation cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. Appellate courts should not disturb reasonable evaluations of credibility and reasonable inferences of fact upon review where conflict exists in the testimony. Id. The WCJ's determinations as to whether claimant was credible and has discharged her burden of proof are factual determinations. However, where one or more legal errors on the part of the WCJ interdicts the fact-finding process, and the record is otherwise complete, the reviewing court should make an independent de novo review of the evidence, giving *856 no deference to the WCJ's factual findings, and render judgment. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 510; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 747; Davies v. Johnson Controls, Inc., 36,498 (La. App. 2 Cir. 10/23/02), 830 So.2d 462, 465, writ denied, 02-2855 (La.1/31/03), 836 So.2d 70.
Louisiana Revised Statute 23:1031.1A entitles every employee who is disabled because of the contraction of an occupational disease to receive compensation benefits, provided that the employee's illness arises out of and in the course of his employment. An injury due to work-related carpal tunnel syndrome is specifically included as an occupational disease under LSA-R.S. 23:1031.1B. However, LSA-R.S. 23:1031.ID creates a rebuttable presumption in favor of the employer against coverage where the employee has not been performing work for that employer for twelve months or more prior to contracting the occupational disease. The statute further provides that any occupational disease contracted within the twelve months' limitation shall become compensable when the claimant proves that the occupational disease was contracted during the course of the prior twelve months' employment. LSA-R.S. 23:1031.1D was amended by 2001 La. Acts No. 1189, § 1, effective June 29, 2001, to change the burden of proof necessary to overcome the mandatory statutory presumption against coverage from an "overwhelming preponderance" to a mere "preponderance" of the evidence.
The amended version of LSA-R.S. 23:1031.1D provides, in pertinent part:
Any occupational disease contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by a preponderance of evidence. (Emphasis added.)[2]
Neuromedical does not dispute that claimant suffered from carpal tunnel syndrome. Rather, Neuromedical contends that because claimant was employed at Neuromedical for less than six weeks, the statutory presumption against coverage applies, and claimant failed to carry her burden to overcome the presumption. Neuromedical contends that the heightened burden of proof (overwhelming preponderance) required in the former version of LSA-R.S. 23:1031.1D applies in this case, because the former version of the statute was in effect in 1999 at the time of claimant's carpal tunnel syndrome, at the time of her employment at Neuromedical, and when she sought treatment for her carpal tunnel condition. In support of this argument, Neuromedical cites this court's recent decision, Hurst v. Sanderson *857 Farms, Inc., 02-1334 (La.App. 1 Cir. 5/9/03), 846 So.2d 954, 957-958, wherein another panel of this court specifically held that the governing version of this particular statute is the one that was in effect at the time of the alleged injury.
The supreme court has held that statutes changing the burden of proof and statutes creating rebuttable presumptions are to be considered procedural and are to be applied retroactively. See Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724, 729, cert. denied, 524 U.S. 940, 118 S.Ct. 2347, 141 L.Ed.2d 717, (1998). See also Marmino v. City of Crowley, 02-0472 (La.App. 3 Cir. 10/30/02), 829 So.2d 1117, 1121, writ denied, 02-2914 (La.2/7/03), 836 So.2d 105; 13 H. Alston Johnson III, Louisiana Civil Law Treatise, Workers' Compensation, § 222 n. 21 (4th ed.2002). Although that portion of the holding in Hurst dealing with the applicable version of the burden of proof is subject to question in light of other jurisprudence,[3] we find it to be of no consequence in this case which burden of proof is applied, because claimant has not met either standard.
The WCJ relied on the last injurious employer doctrine outlined in Gales v. Gold Bond Bldg. Prod., 493 So.2d 611 (La.1986), to find that Neuromedical was responsible for claimant's carpal tunnel syndrome. In oral reasons, the WCJ discussed Gales and the fact that Neuromedical was the last injurious employer with regard to causation. However, we believe the WCJ erred in relying on the last injurious employer doctrine in this case. Gales did not involve a situation where the employee was employed for less than twelve months. Therefore, the statutory presumption of LSA-R.S. 23:1031.1D was not an issue. The record in Gales established that the final employer contributed to the employee's occupational disease. See Ball v. Wendy's Int'l, Inc., 36,922 (La. App. 2 Cir. 3/5/03), 839 So.2d 1208, 1216,
writ denied, 03-0978 (La.5/30/03), 845 So.2d 1056.
In the case sub judice, the WCJ legally erred by ignoring the mandatory statutory presumption in favor of Neuromedical, stating in oral reasons, "the presumption in this type of case simply does not apply."[4] The statutory presumption automatically arose because claimant was employed at Neuromedical for less than twelve months. Therefore, it follows that the WCJ's factual finding regarding causation based on the last injurious employer doctrine was also in error. Based on the legal error of the WCJ, we must review the record de novo regarding claimant's burden of proof and causation.
Claimant's uncontradicted testimony at trial was that she first experienced problems with numbness and pain in her hands in March 1999, while employed by Ochsner. She stated that she performed transcription services at Ochsner that were essentially the same as those that she performed at Neuromedical. Claimant's medical records confirm that she was first diagnosed with probable carpal tunnel syndrome in March 1999, prior to her employment with Neuromedical. Neuromedical does not dispute that claimant first suffered *858 from carpal tunnel syndrome while employed at Ochsner. Neuromedical simply argues that all of the evidence reveals that claimant in fact contracted carpal tunnel syndrome before she was employed at Neuromedical.
We agree and find merit to Neuromedical's argument. To overcome the statutory presumption against coverage, claimant must prove the occupational disease was "contracted" during her employment at Neuromedical. However, our review of the record reveals that claimant contracted the carpal tunnel condition prior to her employment at Neuromedical. The medical evidence and claimant's testimony reasonably support this conclusion.
Furthermore, our review of the record reveals no evidence from any objective or independent source linking the cause of claimant's carpal tunnel syndrome to any trauma during her employment at Neuromedical or to the performance of her job duties as a medical transcriptionist while at Neuromedical. The only statements in the record regarding causation are those made by claimant to her physicians and in her self-serving testimony at trial, stating that she experienced pain and numbness after a particularly long day of typing at Neuromedical. Additionally, the record contains claimant's hearsay statement that her doctor told her the underlying cause of her condition was too much typing. However, no doctor testified at trial, and claimant introduced no doctors' depositions or medical reports suggesting that claimant's job at Neuromedical contributed to or caused her carpal tunnel syndrome. Although the medical records confirm the diagnosis and treatment for carpal tunnel syndrome, there is simply no medical evidence establishing with any degree of medical certainty or reliability that claimant's condition developed from her employment activities at Neuromedical. To the contrary, the record reasonably supports the conclusion that claimant's carpal tunnel syndrome predated her employment at Neuromedical.
The WCJ's apparent belief in the claimant's self-serving and uncorroborated testimony alone is insufficient to prove causation. Stuart v. New City Diner, 99-2270 (La.App. 4 Cir. 3/15/00), 758 So.2d 345, 351. Expert testimony of an objective quality, focusing on probabilities, in addition to claimant's testimony, is required to support a finding of an occupational disease. Ball, 839 So.2d at 1214; Dibler v. Highland Clinic, 27,274 (La.App. 2 Cir. 9/27/95), 661 So.2d 588, 592. The causal link between the claimant's occupational disease and the work-related duties must be established by a reasonable probability. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1165; Lee v. Schumpert, 36,733 (La.App. 2 Cir. 1/29/03), 836 So.2d 1214, 1221. The claimant will fail if there is only a possibility that the employment caused the occupational disease or if other causes not related to the employment are just as likely to have caused it. Ball, 839 So.2d at 1214.
Considering the strong presumption against finding an occupationally related disease in an employee who had been on the job less than twelve months (in this case for less than six weeks), we find that the claimant's self-serving testimony and the lack of medical evidence relating her carpal tunnel condition to her employment at Neuromedical was insufficient to overcome the presumption against coverage set forth in either version of LSA-R.S. 23:1301.1D.
Accordingly, considering the law and the evidence, we find that the WCJ's conclusion that Neuromedical was responsible for claimant's carpal tunnel syndrome was unreasonable and manifestly erroneous. Claimant failed to overcome the presumption *859 by proving by even a mere preponderance, much less an overwhelming preponderance, of the evidence that her carpal tunnel syndrome was caused by her employment as a medical transcriptionist at Neuromedical. Therefore, we reverse the WCJ's judgment against Neuromedical and its insurer, and hereby render judgment dismissing claimant's suit. Because we reverse the WCJ on the awarding of workers' compensation benefits, it is unnecessary to address the remaining issues raised by Neuromedical. Costs of this appeal are to be paid by claimant, Deanna O. Dowell.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result.
NOTES
[1] The specific dollar amounts of the judgment are not outlined in this opinion because Neuromedical does not complain on appeal about the amounts awarded.
[2] The former version of LSA-R.S. 23:1031.ID provided the following:

Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence. (Emphasis added.)
[3] See Sudwischer, 705 So.2d at 729; Marmino, 829 So.2d at 1121; Ball v. Wendy's Int'l, Inc., 36,922 (La.App. 2 Cir. 3/5/03), 839 So.2d 1208, 1215 n. 4, writ denied, 03-0978 (La.5/30/03), 845 So.2d 1056; Davies v. Johnson Controls, Inc., 830 So.2d at 465. But see Jackson v. Conagra Poultry Co., 02-492 (La. App. 3 Cir. 3/5/03), 839 So.2d 1079, 1083, writ denied, 03-0986 (La.5/30/03), 845 So.2d 1054.
[4] The 2001 amendment changed the burden of proof required to rebut the presumption, but the presumption itself remained intact.